and the second district is now open. The Honorable Justice Andy Jorgensen presiding, along with Justice George Bridges and Justice Liam C Brennan. The case is number 2180939 people of the state of Illinois plaintiff appellee versus Jimmy A Reiss defendant appellant arguing for the appellant, Nicholas Curran, arguing for the appellee, Victoria Joseph. Are both sides ready to proceed? Yes, Your Honor. Yes, Your Honor. Okay. Mr. Curran, you may proceed when you are ready. Good morning. May it please the court. My name is, again, Nicholas Curran, and I represent the defendant appellant, Jimmy Reiss. Mr. Reiss was convicted of predatory criminal sexual assault and aggravated criminal sexual abuse. And this is the appeal from the denial of his post conviction and supplemental post conviction petitions. The primary issue I would like to address this morning is the ineffective assistance of counsel claim, which the post conviction court denied after a third stage hearing. So, just to provide a little bit of factual background or context for this, the defendant's first trial resulted in a hung jury. Prior to the second trial, the state disclosed Elle Kareem as a witness. And the state's disclosure of her identified her as an expert in child psychology and therapy. And the state also disclosed Kareem's notes of her therapy sessions with the, I'll just identify her as the victim in this case, GS. At trial, the state tendered Kareem as an expert in child psychology with a specialty in trauma. She testified that she provided treatment to a lot of sexual abuse victims and that she provided treatment to GS. She testified that the victim exhibited symptoms of trauma, including lots and lots of nightmares and lots and lots of anxiety. And she testified that she diagnosed GS as having post traumatic stress disorder. And another thing that's crucial to all this is the prosecution also elicited testimony from GS's mother that GS did not have anxiety before the alleged abuse, but that she had severe anxiety afterwards. And then the prosecution relied on Kareem's testimony to argue the defense during its closing argument. So the ineffective assistance of trial counsel claims centers on Mr. Reese's trial attorney's failure to investigate and challenge Kareem's testimony. And in particular, GS's mental health records, which defense counsel knew of but failed to obtain prior to trial, showed that GS had been diagnosed with PTSD before the alleged abuse ever took place. Beyond that, there were several ways in which it was alleged in the petition and then litigated at the third stage hearing that defense counsel should have attacked or limited Kareem's testimony. For example, Kareem was not a psychologist. None of her degrees were in psychology. She was not licensed as a psychologist. She was not even eligible to be licensed as a psychologist. And yet the trial court at the state's prompting identified her as having a level of expertise commensurate with a child psychologist. The state tendered her as an expert in child psychology. And it was never pointed out to the jury that, in fact, Kareem did not hold those qualifications. It was never pointed out that Kareem was GS's therapist and an advocate for her rather than an objective forensic examiner. This came out quite a bit during the third stage hearing. Kareem admitted that she was looking out for GS's best interests as her therapist. She admitted that she works with prosecutors. She gave the prosecutor in this specific case advice on how to ask GS questions at trial. And in fact, GS's mother, Kareem admitted, asked her many questions about how to testify at trial. And all of these things point to bias. I think perhaps more importantly, Kareem's notes did not enunciate a lot of the opinions she testified to at trial. Again, this is something that came out at the third stage hearing. She testified that the child was showing lots and lots of anxiety, and yet her notes don't reflect that. The same thing with her testimony that GS was suffering from lots and lots of nightmares. The jury at the defendant's trial was never told that Kareem did not attempt to differentiate between GS's various pre-existing mental disorders, including ADHD and Asperger's. Kareem was allowed to testify at trial as to the effect of Asperger's on GS's ability to communicate, even though in her own notes, Kareem admitted that she was not an expert in Asperger's. So again, these are basic things that any reasonable defense attorney would object to, to limit the scope of what it was Kareem testified to at trial. But again, circling back, the most important thing is that while Kareem admitted that a patient's prior psychological treatment is important to rendering an accurate diagnosis, it was never pointed out to the jury that Kareem never went out and obtained GS's prior treatment records, which indicated that she had a pre-existing diagnosis of PTSD. So if we turn to the post-conviction court's decision, the court did hold that trial counsel's performance was deficient for failing to obtain GS's prior records and for failing to consult with an expert. However, the court held that trial counsel was not deficient for not attacking Kareem's testimony because it was consistent with his overall strategy of emphasizing the weaknesses in the state's case. The court committed a number of legal errors in how it analyzed and ultimately ruled on the defendant's ineffective assistance of counsel claim. The first thing, and probably the most important thing, is that the court conjured up a strategic basis to justify defense counsel's failure to attack Kareem's testimony at trial that defense counsel himself did not offer at the third stage hearing. At the third stage hearing, defense counsel could not point to a strategic reason for not challenging Kareem's credentials or her opinion. In fact, he testified to the exact opposite. He believed his approach was the same as with any other expert, which is to question their credentials and their conclusions. But the post-conviction court invented a strategic reason for not challenging the testimony. And the justification that the post-conviction court came up with was error for a multitude of reasons. So there's case law, which we cite in our brief, mostly Harris v. Reed, which relied on a U.S. Supreme Court case, Kimmelman v. Morrison, which holds that just as a reviewing court should not second-guess the strategic decisions of counsel without the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer. And that's exactly what the post-conviction court did here. Another well-established principle of law is that an attorney can't make a strategic decision after failing to conduct reasonable investigation. And again, trial counsel here conceded that he should have obtained these records. He had no reason to not obtain them. And in fact, the court agreed that he should have obtained them. So in other words, no reasonable investigation took place. One of the things that we discussed at length in our brief is that many of the actions that defense counsel should have taken would not have emphasized Karim's testimony, but would have preemptively limited the scope of it. For example, precluding her from testifying to anything having to do with Asperger's since she admittedly was not an expert in that area. I think, you know, kind of overarching all of this is that as a matter of logic, the post-conviction court's strategic reason that it came up with for not challenging Karim's testimony doesn't make any sense. If your strategy is to emphasize the lack of evidence and hold the state to its burden of proof, then you have to attack the reliability or credibility of any evidence the state offers to corroborate the abuse. It's a false dichotomy to conclude that the choice was either to emphasize the lack of evidence or attack Karim's testimony. There was a related reason that the post-conviction court held that it was reasonable for defense counsel to not rigorously cross-examine Karim, and that was he contended or he made reference to potentially opening a Pandora's box. And that sounds reasonable in the abstract or the hypothetical. Certainly, there are witnesses as a defense attorney you should be careful with because you don't know what it is they'll testify to, or you don't know the things that the witness could testify to that would be potentially really damaging to your defense. But Strickland is not based on a hypothetical. It's a case-specific analysis based on the actual facts and circumstances facing the defense attorney at the time his or her decision is made. And here, there was nothing that Karim could have testified to that the jury had not otherwise been exposed to through other evidence. And there was nothing that the state was able to identify and the post-conviction judge did not identify in his ruling that Karim could have testified to that would have been damaging to the extent that it justifies the wholesale failure to cross-examine her and attack her testimony. Just to briefly – oh, there we go. So, I certainly am available to answer any questions the court may have concerning this issue. Justice Brennan, do you have any questions? So, the state offered Karim as an expert in child psychology. Karim did not go where the state went in that regard. Would that be fair? She actually fronted her shortcomings in terms of achieving a psychology doctorate. Is that fair? I don't – that's something that the state has argued. I don't agree that that's an accurate representation of the record. She claimed during her testimony before being tendered and accepted as an expert in child psychology that she taught psychology classes. She also claimed that she was ABD-PhD, which suggested that she was very close to obtaining her PhD, when in fact she was not ABD-PhD. That's something that came out at the hearing. Because she had not done any coursework in a matter of decades, she would have had to have started her coursework all over again in order to be PhD-eligible. And most importantly, it was never pointed out to the jury specifically what being a psychologist – or what's required to be a psychologist in Illinois. In Illinois, you can't hold yourself out as a psychologist if you're not licensed as one. She didn't even have the training or the education to become licensed, and that was never pointed out to the jury. All right. Thank you. Do – one of the – when I read the briefs and I consider your arguments, one of the things that I think is suggested strongly is the only difference between the first trial and the second trial was essentially the Karim test. There was an extra video, though, played for the jury in the second trial. Is that not the case? So there was a second video. And, you know, I'm not certain that it was made part of the record in the appeal in this case. But, yes, there was a second video that I believe was shot, if memory – if my memory is correct, by G.S.'s mother at the hospital preliminary to the examination. And that was an issue in the direct appeal because the defense claimed that the video should not have been admitted, in part because the questions that were being asked during it were very leading, the responses at times were somewhat not intelligible, and things of that nature. But, yes, you are correct that there was another video that was admitted at the – the second trial that was not admitted at the first. And then if I could just ask one other question. Karim did testify – she did – she disagreed with the doctor, Dr. Cooper, as to her ability to render a Asperger's diagnosis. They didn't actually agree on that question at the third stage of evidentiary hearing. Is that correct? Well, I think that specifically what he testified was that she's not qualified to render a diagnosis as a psychologist. But she did not – I guess that's my point. Even though she's not a psychologist, which I think it is kind of ludicrous that that was hoisted on the jury, I agree with you. But even though she's not a psychologist, she does have the background that allows her to make that diagnosis. Is that correct? Not as a psychologist. Certainly. I would agree that she has the qualifications to render a diagnosis as a therapist. But to make sure that these two things are not conflated, the argument is not that her testimony as a whole would have been inadmissible, but that it would have been viewed by the jury in a very different light had a proper cross-examination of her been conducted. Fair enough. Thank you. I have no other questions. Judge Bridges? Yes, thank you. Counsel, Karim never testified that she was a psychologist, correct? Well, again, she – I would argue that she left the jury with that impression given that she talked about her having taught classes in psychology and then her failure to correct the state when the state identified her as an expert in child psychology. Okay. So the reason being is because I thought she was pretty consistent in her testimony about being only a licensed clinical counselor. And it was more of the state's position of trying to make her a psychologist. Do you agree with that? I do agree that most of the appearance of her having credentials beyond what she had was the product of the prosecution's representation as opposed to her own testimony. But I think, in my view, that's a distinction without a difference. It's incumbent upon defense counsel to ensure that she's not held out as having a higher level of expertise than she actually did. Okay. Assuming that we agree with the post-conviction court's ruling that defendants' counsel erred in attempting to obtain G.S.'s medical records and cross-examining Kareem and presenting her as an expert or not – but as a psychologist, can you explain how this error could have changed the outcome of these proceedings? So the simplest explanation of prejudice is that without Kareem's testimony, the jury was deadlocked. And with Kareem's testimony, the defendant was convicted. Now, I understand that the two trials are not carbon copies of one another. But when you're assessing prejudice, you know, you have to make a common-sense evaluation or analysis of all the evidence and determine whether or not there is a reasonable probability that the result would have been different in the absence of trial counsel's errors. The problem here with trial counsel's errors is that they distorted the truth-seeking function of the trial. The jury was left with the impression that G.S. did not have anxiety before the alleged abuse. But after the alleged abuse, she did have anxiety. She had extreme anxiety, severe anxiety. That's indisputably false. The jury was also left with the impression that she did not have PTSD before the alleged abuse and that she did afterwards. And that's indisputably false. And, of course, the whole reason that kind of evidence is introduced by the prosecution is because it corroborates allegations that are otherwise uncorroborated and are based entirely just on the alleged victim's statements. So I think it's a bit—you have to bend over backwards to say that, you know, this could not have made the difference in Mr. Reese's trial. That the jury said, well, we're not sure about her, what she says, and exactly what happened. But because of her emotional response and her behavioral response afterwards, that must mean that her accusations are credible. So I absolutely believe that prejudice here under Strickland has been established. Ms. Kern, isn't it true that in the second trial, the defendant, he didn't testify, and that was different? We also had testimony from Detective Hoffman, and there was also the video of G.S.'s statement made at the hospital. That was presented at the second trial, and it wasn't in the first trial. Isn't that a significant difference other than just Green's testimony? I do not agree with that. First off, you know, the defendant—so we're looking here at the state's evidence. I don't understand how the defendant could be punished for not testifying at the second trial. And the fact that, you know, we're still—what we're doing here is we're assessing the strength of the state's evidence. And, of course, Strickland says that if the evidence is overwhelming, then it's less likely that counsel's errors could have contributed to the verdict. Conversely, if the evidence is weaker, then it's more likely that errors contributed to the verdict. Here, there's nothing about these extraneous things. You know, this video at the hospital, which was my understanding from reading the transcripts and the briefs and the direct appeal, and the appellate court's decision—this court's decision on direct appeal was short and not really all that involved. And then I—you know, whether or not the defendant testified, it's the state's burden to prove him guilty. So I don't understand how that could so dramatically change things to say, well, now the evidence against him is overwhelming, simply because he didn't testify that he didn't do it. My question was in response to your statement when you indicated that it was—the difference between the two trials was Kareem's testimony. And I was pointing out there are more than just Kareem's testimony that makes those two trials different. Justice Jordanson, I have no further questions. Well, you both have asked a myriad of questions, and I have no additional questions. Counsel, you will have an opportunity for rebuttal. Thank you. Is the state ready to proceed? Yes, Your Honor. All right. Ms. Joseph, you may proceed when you're ready. May it please the court and counsel, there are four topics that the state will address this morning, beginning with addressing the standard of review in the case, considering the evaluation of the trial evidence, and then looking at the defendant's ineffective assistance of counsel claim, then the actual innocent claim. Starting with the standard of review, there were two stages in this post-conviction proceeding that is being reviewed today. The ineffective assistance of counsel claim was dismissed at the third stage, so following an evidentiary hearing. So at this point, it is a manifest weight standard. There was fact-finding and credibility determinations. Here, the defendant bears the burden of making a substantial showing of a constitutional right, and as this is at the third stage, he must show by a preponderance of the evidence a substantial violation of effective assistance of counsel occurred. On the other hand, the actual innocence claim was dismissed following second-stage hearing, which means that is a de novo review, which includes taking as true all well-pleaded facts that are not positively rebutted by the record. The determination there is whether the post-conviction petition made a substantial showing of actual innocence to warrant an evidentiary hearing. Under either analysis, the review is going to include a determination of the probability there would have been a change in the result of trial. Under Strickland, for the ineffective assistance of counsel claim, the error, the result of the proceeding would have been different, and that is sufficient to undermine the confidence in the outcome. For actual innocence, the new evidence must be of such a conclusive character that it will probably change the result on trial. Having reviewed the standards of review, the people would like to address the evaluation of the trial evidence. As it affects the evaluation of evidence for both claims, the people wish to dispel the claim that the victim's testimony about the abuse was neither consistent nor unreliable or uncooperated. I'm sorry, Your Honor. As stated in the case of Choate at paragraph 55, certain out-of-court statements by a child witness are admissible because they are reliable, corroborating evidence. On this appeal, the defendant has not challenged the propriety of the admission of the victim's three out-of-court statements that were admitted after a proper 11510 hearing. The purpose of that hearing was specifically to determine the sufficient safeguards of reliability of those statements. She had three consistent prompt outcries within 48 hours of the abuse, the statements to her mother on the 18th of September, the statements to the treating physician on the 18th of September, and the statement to the interviewer at the Child Advocacy Center on the 19th of September. Having conducted that hearing, the three prompt outcries were both consistent and reliable. Having reviewed that, the people turned to the ineffective assistance of counsel claim. Here, the defendant had to establish both the deficiency prong and the prejudice prong. The people acknowledge that the court also found those errors did not prejudice the defendant, and the people maintain the prejudice prong here is controlling. The change outcome sought through more vetting and attack and challenge of Karim would be to stop the state from attributing greater weight to the diagnosis of PTSD and then to impeach Karim about the victim's symptoms. The thing we do have to look at here is the victim was diagnosed with PTSD. There was an original diagnosis in 2009, which has not been rebutted or challenged. Both experts at the evidentiary hearing were consistent in their testimony that PTSD waxes and wanes and new stimuli or events can trigger PTSD. The evidentiary hearing basically came down to the difference between the two experts as to what event or trigger specifically caused the symptoms of PTSD during the victim's treatment in 2013 by Karim. The evidentiary hearing here provided a whole picture of what the defendant felt should have been done by which the trial court determined the impact of that testimony. Karim's testimony at trial was not sufficiently weighty to affect the outcome. Specifically, the trial court found her testimony did not directly relate to the defendant or the abuse. This finding was not against the manifest weight of the evidence. It found she did not advocate for the trauma being associated with the abuse charge. This finding was not against the manifest weight of the evidence. The appellate court, it found that the appellate court did not explicitly rely on Karim's testimony in affirming the defendant's conviction. This is not against the manifest weight of the evidence. The trial court to rely on this court's opinion as the arbiter of that evidence. Karim's testimony here was limited, and the defense counsel kept that limited by not pursuing further information. There was not a reasonable probability that in attacking her background and opinions of what she interpreted the victim's behaviors to mean was an attack on the reliability of the conclusion of the PTSD would have changed the outcome at trial. It did not discredit the victim herself. It did not alter the fact that Karim actually treated the victim. Records do not change the victim's testimony or outcries. Therefore, the trial court did not find that there was sufficient weight to her testimony to change the outcome at trial. Finally, turning to the actual innocence claim, these claims should not be used to relitigate the sufficiency of the evidence. We're looking at the probability, not certainty, of what another jury would do considering all of the evidence, both the old and the new together. This affidavit was not new evidence. It was known to trial counsel before the first trial, and counsel did not, and certainly by the second trial, having known he did not testify consistently at the first trial with the pretrial statement to counsel, did not use due diligence to obtain Andrew's statement, especially since he warned him. Due diligence is not, could counsel have used an affidavit to impeach Andrew, it is whether he used due diligence to obtain or secure it. And it also could have been presented at a prior proceeding, not just at a prior post-conviction petition, and the trial court properly asked if it could have been raised in a post-trial motion. Also, it was not conclusive. Most importantly, it did not go to defendant's actual innocence because it was not both exonerating and conflicting. It is merely impeachment or conflicting, as it would impeach his prior trial testimony, but it would also conflict with Thomas' testimony and the defendant's statements and testimony. It does not fully exonerate the defendant, as the affidavit does not count for where Andrew was the whole night. It is read in conjunction with other testimony, such as Kendra's testimony, which has credibility issues of its own. Most importantly, looking at paragraphs 29 of the record, Andrew said that his mother told him to go downstairs, and the mother came downstairs to talk to him about his inappropriate with the victim. So there certainly was a period by which Andrew could not account for the defendant the entire night. Finally, there must be a substantial showing of the deprivation of a constitutional right. The defendant's speculation as to what caused a hung jury or the verdict in the second trial is merely speculation, as there were multiple differences between the trials, and we cannot speculate on what a jury did or did not rely on in reaching that verdict. We cannot build a case for a substantial showing of a deprivation of a constitutional right on assumptions. It is a burden on the defendant to make this showing. Thank you, your honors, and we will now be available for questions. Justice Brennan. So, I just want to, I don't know that this has been strictly addressed in the briefs, but I just want to ask. We don't have a claim here that trial counsel was ineffective for failing to somehow memorialize Andrew's statements, such that they could be used to impeach him substantively at trial. That claim has not been made, correct? I'm sorry, you were fading in and out, but I believe your question was whether there was a claim of ineffective assistance of trial counsel regarding Andrew's affidavits and not memorializing them. Correct, such that they could not be used to impeach him substantively at trial. We do not have that claim, your honor. And because we do not have that claim, when looking at what a new trial might be in terms of ineffective assistance on the other ineffective, on the ineffective assistance claims that were raised, we should not weigh Andrew's affidavit as to that question. Is that also correct? As far as what the outcome would be. Correct. No, your honor, it is not. It has not been found to. Yeah, because he didn't raise ineffective assistance as to the Andrew memorializing issue. When I'm looking at the other ineffective assistance, that's alleged. I'm not going to consider Andrew's affidavit and what a new trial would look like. Is that correct? No, your honor, because at this point, it hasn't been found to be. It would not have been found to determine a new trial was warranted, or at least here, it wasn't even found to warrant an evidentiary hearing. So we would be looking at what Andrew's testimony was at the trials. And even if we were to look at it, there are a lot of problems with the conflicts between Andrew's two trial testimonies against this affidavit, the bias and credibility issues, which obviously were not determined at the second stage due to his affidavit. It was just before such credibility determinations were made. All right. I don't have any additional questions. Thank you. Bridges. Yes, thank you very much. Justice. Counsel, my question is, couldn't the records, if they had been subpoenaed, couldn't they have completely undermined the clinical counselor Karen's testimony? If we're evaluating the totality of all of the evidence of both the records and Karim's testimony at the evidentiary hearing, which would be what we're doing at following a third stage. No, your honor, Karim explained that her diagnosis, had she even known about the prior diagnosis, would have remained. Well, let me ask you this. You're breaking up. I'm sorry. You can continue. I'm sorry. I thought you were done, but I was the phone. No, I just know she did explain that her opinion would not have changed even if she knew about the prior medical records. And both experts testified that new stimuli can either re-trigger or you can have multiple stimuli or events leading to a diagnosis of post-traumatic stress syndrome. With respect to the records, couldn't GS's prior medical records have established that her PTSD was more likely to result as the auto accident than the alleged sexual abuse? I think had it been presented, that would have been a determination for the jury to make as that is an inference from the record as to what was causing her trauma in 2012 and 13 when she needed treatment. So it's your position that Karim's trial testimony didn't relate to any abuse by the defendant? The finding was that it did not directly relate to the abuse. Karim's testimony was that she treated the victim. She explained the symptoms she was saying. I do not recall any direct evidence from Karim that there was even a discussion. I'm trying to pull back the testimony, Your Honor. I believe the only statement that there was something that came out about her being concerned about her younger brother being abused. But no, I do not believe the trial court's finding was against the manifest suite of the evidence that Karim's testimony did not directly implicate the defendant or the abuse. With respect to the cross-examination of Karim, or should I say the lack thereof, does that lend itself to the reasonable probability that further cross-examination of her would have altered the results of the trial? That further cross-examination would have altered the results of the trial. It may have clarified some of the points that defense counsel wishes were clarified, but she did not misstate her training or her position when she testified. I believe at the evidentiary hearing, even if she wasn't a licensed psychologist, she was still able under her job as a counselor with the girl to make a PTSD diagnosis in order to treat her as her counselor. So while there may have been, you know, the jury was left to determine the weight that they wanted to give to her expertise, but essentially it comes down to the fact that she was treating this victim and it allowed the reasonable inference that the treatment shortly followed the abuse and it was reasonable to argue that she needed treatment because she was abused. Thank you, Counselor. Thank you, Justice George. I have no further questions. All right. My question is really a follow-up on what Justice Bridges brought up, and that is, it is the state's position that cross-examination of the most significant change between trial one and trial two would not have made a difference. Is that your position? Well, Your Honor, the state… I'm sorry. I'm losing. Could you start over with your answer? Of course, Your Honor. Ms. Joseph, please start over with part of your response. The state may not agree with Your Honor's assessment that this was the most significant change between the two trials, as we had a third example of the victim… Excuse me, but let's assume for the sake of my question, it is the most significant bit of evidence. All right, Your Honor. I guess further vetting her as far as her training, her conclusions, again, overall, it would not have substantially changed. It would not have shown actual prejudice here because we are determining… The ultimate question is, did the defendant sexually abuse the victim? This question would have remained the same with or without more thoroughly preparing to and actually attacking her opinions and bringing in another expert because no amount of her expert testimony on the cause of the PTSD diagnosis, by which we had an evidentiary hearing, describing that that was subject to different interpretations by two different experts, would have undermined the victim's three prompt and consistent outcries. And challenging her opinions and diagnosis, again, was not essential to the state's ability to use the evidence and counter that even her observations of the symptoms and behaviors could lead to an inference that those symptoms were related to the abuse without using the actual diagnosis of PTSD. Okay, thank you. I have no further questions. Mr. Curran, are you prepared to give a rebuttal? Yes, Your Honor, and I'll try to be brief. So, one of the things here that I believe was referenced by the state that I want to make sure there's clear understanding about is one of the reasons the post-conviction court felt that there was no prejudice here from the errors that it did find trial counsel made was because this court did not reference Kareem's testimony in addressing the defendant's sufficiency of the evidence argument on appeal. And that is, you know, he wasn't relying on credibility determinations. There was nothing pointed out about Dr. Cooper's credibility that I think could reasonably be called into question. He was purely looking at this court's decision in the direct appeal, and that is, it's fundamentally flawed. This court was asked to assess the sufficiency of the evidence which the defendant on direct appeal attacked based on the inconsistencies in GS's various pretrial statements. This court ultimately held that she testified or she was consistent enough for the evidence to be sufficient to convict. That has nothing to do with Strickland. That's not the Strickland prejudice analysis. You know, the state made reference to speculating about what difference it would have made if Kareem's testimony had been more thoroughly attacked. That's what Strickland requires the court to do. You have to look at all of the evidence and make a determination about whether or not there's a reasonable probability that the jury would have found reasonable doubt had defense counsel properly investigated, vetted, and then cross-examined Ms. Kareem at trial. You know, and if anything, his cross-examination of her actually reinforced everything it was that she testified to at trial. You know, he tried to point out that, you know, because she had never seen GS prior to the alleged abuse, that Kareem did not have a baseline of GS's behavior. And Kareem responded by saying, that's fair to say, but I've been doing this for a long time. I've been working with kids with trauma for over 20 years, so I'm pretty good at being able to see what different kinds of symptoms they have. Okay, so that's great. But you know what? She didn't know that actually the child had been diagnosed with PTSD prior to the alleged abuse, for which she never received any treatment. And I respectfully submit that if you look at everything in totality, it's simply untenable to suggest that this testimony did not contribute to the verdict. And that had the fact that the child had PTSD and anxiety before the alleged abuse, that that would not have made a difference in the outcome. So, I would respectfully ask that Mr. Reese's convictions be vacated. Thank you. Justice Brennan, any questions? I do not have any additional questions. Thank you. Justice Bridges? Nor do I. Thank you. And I have no additional questions either. This court would like to thank both of you first for doing a remote oral argument and also for your very cogent, well-organized arguments here this morning. We will be adjourned and you will receive a written decision in due time. Thank you both. Thank you, Your Honors. Thank you.